UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAYNE KALBFLEISCH,

                                    Case Number: 8:20-cv-02661

      Plaintiff,

vs.

HCA HEALTHCARE, INC., and
HSS SYSTEM, LLC,
d/b/a PARALLON BUSINESS
PERFORMANCE GROUP,

      Defendants.

_____/

## COMPLAINT

The Plaintiff, Jayne Kalbfleisch (hereinafter "Plaintiff" or "Kalbfleisch"), by and through her undersigned counsel, sues the Defendants, HCA Healthcare, Inc., and HSS System, LLC, d/b/a Parallon Business Performance Group, (hereinafter collectively "Defendants" and individually "HCA", "HSS", and "Parallon", respectively), and alleges the following:

### INTRODUCTION

This is an action against the Defendants for damages pursuant to the Americans With Disabilities Act of 1990 ("ADA"), the Americans With Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §12111 *et. seq*., the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, *et seq.* ("ADEA"), the Florida Civil Rights Act of 1992, Florida Statutes §760.10 ("FCRA"), and the Florida's Private Sector Whistleblower Act, §§ 448.101-.105, Fla. Stat. (2013).[1]

_____

[1] Plaintiff will seek an amendment to include additional adverse acts in violation of F.S. §760.10 upon the exhaustion of administrative remedies as required by law.

## JURISDICTION AND VENUE

1.   This is an action seeking damages that exceed $15,000.00, exclusive of interest, attorneys' fees and costs.  Accordingly, this Court has subject matter jurisdiction over this action.

2.   Venue is proper in the Court because all facts material to all claims set forth herein occurred in Pinellas County, Florida.

3.   Plaintiff has complied with all applicable statutory prerequisites and has satisfied all conditions precedent to bringing this lawsuit.

## PARTIES

4.   Plaintiff is a citizen of the United States and a resident of Sussex County, Delaware.

5.   Defendant HCA Healthcare, Inc. ("HCA") is a Delaware corporation.  Defendant HCA provides 27 million patient services per year.  HCA is one of the United States' largest providers of healthcare services.  HCA is made up of locally managed facilities and employs more than 241,000 employees.

6.   Defendant HSS System, LLC, ("HSS"), is a Delaware limited liability company which does business under various fictitious names, including Parallon Business Performance Group ("Parallon").  Defendant Parallon is provider of business and operational services to hospitals and hospital systems. Parallon provides customized services in the areas of revenue cycle, purchasing, supply chain, technology, and workforce management and consulting.  Parallon employs more than 27,000 people.  Parallon provides non-medical administrative and management services, including billing services, necessary for the operations of HCA and its other affiliates and subsidiaries, including overseeing all coding for billing purposes.

7.   Defendants HCA and HSS/Parallon are related entities.  Defendants HCA and HSS/Parallon and both are headquartered in Nashville, Tennessee, with their principal place of business located at One Park Plaza, Nashville, TN, 37203.

8.   HSS/Parallon and HCA govern the coding for all HCA hospitals and facilities and have coding and documentation protocols for all procedures performed in HCA's various hospitals and related facilities.

9.   While HSS/Parallon and HCA operate under different names, the entities are related and collaborate on coding decisions through a single department. All coding issues, concerns, questions, etc., are funneled through their Regs Helpline department.

10.   HSS/Parallon and HCA should be treated as a single, integrated enterprise as they are highly integrated with respect to ownership and operations; they contract with each other for the performance of tasks, and one entity retains sufficient control over the terms and conditions of employment of the other entities' employees, thus should be aggregated and treated as "joint employers"; and the entities delegate sufficient control of some traditional rights over employees to the others thus creating an "agency" relationship between them.

11.   HSS is doing business as Parallon in Pinellas County, Florida.  Given that Parallon/HSS and HCA are so highly integrated as to ownership and operations, they should be considered a single employer or integrated enterprise subjecting them to the jurisdiction of this court.

12.    At all times material to this action, Plaintiff was an employee of Defendants pursuant to the terms and definitions of all applicable statutes, and Defendants were the employer of Plaintiff pursuant to the terms and definitions of all applicable statutes.

## GENERAL ALLEGATIONS

13.   Plaintiff began working for Defendants on June 2, 2003 and has worked in

multiple positions throughout her tenure.  Since May 2014, she has held the position of Tampa West Florida Division Coding Manager.

14.  Throughout her tenure with Defendants, Plaintiff has made continuous efforts towards advancement including obtaining her Bachelor's Degree in Healthcare Administration in 2013 as well as her Master's Degree in Healthcare Administration in 2014.

15.  In April 2015, at the age of 44, Plaintiff began having medical issues, including but not limited to painful breast masses, a diagnosis of fibroadenoma, numbness in her leg, and a diagnosis of lumbar disc pathology at the L3-S1 levels requiring spinal injections and nerve blocks.  Plaintiff has also been diagnosed with and requires treatment for ADHD, OCD, severe anxiety, PTSD and bipolar depression.

16.  Plaintiff's conditions and diagnoses are and have been known to Defendants and have required ongoing treatment and diagnostic testing.

17.  Specifically, members of Defendants' chain of command including but not limited to Plaintiff's direct supervisor at one time, former Coding Director Suzanne Stone ("Stone"), were aware of her medical issues as Plaintiff needed approval for time off for medical appointments.

18.  Despite being salaried, Plaintiff has had to use PTO to attend her medical appointments.

19.  Plaintiff, in addition to obtaining the additional education and advanced degrees a as referenced *supra*, has furthered her efforts towards advancement and has applied for approximately fifty-one (51) different positions with Defendants since 2014.

20.  The positions for which Plaintiff applied were filled with employees who were less qualified, younger and/or not disabled without a legitimate, non-discriminatory or non-retaliatory reason for doing so.

- 4 -

21.  Plaintiff has repeatedly requested she be nominated for the Leadership Program based upon her long tenure, excellent performance and outstanding qualifications. Defendants have refused to afford her this opportunity to advance her prospects for promotional opportunities without a legitimate, non-discriminatory or non-retaliatory reason for doing so.

22.  Plaintiff has not been selected for any of the positions for which she has applied and has not even been afforded an interview for many of them despite her extensive experience, tenure, education and other qualifications.

23.  Monique Graham ("Graham") is Plaintiff's current supervisor and the current Coding Director.  Graham is younger than Plaintiff, does not suffer from a disability, and has been Plaintiff's superior intermittently throughout Plaintiff's tenure.

24.  Beginning in 2015, Graham, as the Assistant Coding Director and Plaintiff's supervisor at that time, engaged in discriminatory bullying and harassing behavior toward Plaintiff due to Plaintiff's age and disabilities, primarily her ADHD and OCD.  Graham did not like Plaintiff's high-energy, detail-oriented personality that is a product of her ADHD and/or OCD.

25.  Consequently, Graham constantly micromanaged all of Plaintiff's responsibilities and routinely called Plaintiff out harshly criticizing and ridiculing Plaintiff's work and personality on manager calls humiliating her in front of other managers without justification.

26.  Other managers were not treated in this manner.

27.  As a result of these discriminatory actions, Plaintiff complained to Stone and filed an internal complaint against Graham in 2015.

28.  Graham's Assistant Director position was removed from the Parallon structure and she was placed into the position of EM Manager.

29.  Subsequent to the discriminatory actions of Graham and the filing of the internal complaint against Graham, Plaintiff initially became concerned with being passed over for positions after applying for a position that was posted September 17, 2015, for which she was not offered an interview despite her qualifications.

30.  Plaintiff, at that time, began to associate the discriminatory actions and intent of Graham with her not being considered for the positions for which she had applied.

31.  In or around late 2017-early 2018, Stone announced her retirement from her position as Coding Director and Plaintiff submitted her application.

32.  COO, Kelly Wilson ("Wilson"), appointed Graham as the interim Coding Director during the application process.

33.  During this interim period, Graham's discriminatory and retaliatory bullying of Plaintiff resumed and intensified.

34.  Plaintiff advised Wilson of Graham's behavior, but Wilson ignored Plaintiff.

35.  Thus, in February 2018, Plaintiff filed a second internal complaint against Graham, similar to the first complaint, alleging continuing discrimination, harassment and bullying behavior towards Plaintiff based upon and related to her age and disabilities.

36.  When Plaintiff inquired as to status, Wilson advised Plaintiff that the application/interview process for the permanent Coding Director position was slow.

37.  On April 4, 2018, Wilson advised that Chris Averill ("Averill") was appointed as Coding Director for the Tampa and Orange Park divisions.

38.  Plaintiff was significantly more qualified for the Coding Director position than was Averill, yet Plaintiff was not interviewed nor was she given a reason why she was not interviewed.  Averill does not suffer from a disability.

39.  Also, in early 2018, two Assistant Coding Director positions that reported to

Averill became available.  Wilson and Averill appointed Graham and Leah Carter ("Carter") to these positions.

40.  Plaintiff, again, was not even afforded an interview despite her application for the positions and despite the fact that she is significantly more qualified than either Graham or Carter.

41.  Neither Graham nor Carter have the framework degree criteria required for the Assistant Coding Director position.  Plaintiff does have the required framework degree criteria.

42.  Graham is younger than Plaintiff and neither Graham nor Carter suffer from a disability.

43.  As Tampa's Assistant Coding Director, Graham was once again Plaintiff's supervisor and continued the harassing and bullying behavior.  Plaintiff complained to Averill and Wilson to no avail.

44.  Also, in early 2018, Plaintiff applied for an open HCA position of Health Information Management Director Eastside.

45.  On March 15, 2018, Plaintiff was advised she was not being considered for the position as they were considering other candidates whose qualifications and experience more closely fit the requirements of the position.  Plaintiff previously held this same position for more than fifteen (15) years yet was not even afforded an interview for this opening.

46.  After continuing to be denied interviews and/or being passed over for twenty-three (23) positions for which she was qualified, Plaintiff filed her initial EEOC charge on April 24, 2018 alleging discrimination based upon age, disability/perceived disability and retaliation.

47. On June 28, 2018, Plaintiff amended her charge to include an additional ten (10) positions for which she was not interviewed and/or not selected despite her qualifications without any legitimate, non-discriminatory or non-retaliatory reason.

48. Following her filing of the EEOC charges, Defendants removed the support of Contract Coders that were assigned to her and reassigned them to another coding manager without a legitimate, non-discriminatory or non-retaliatory reason for doing so.

49. Following her filing of the EEOC charges, Defendants stripped Plaintiff of her responsibilities over the rehabilitation facilities without a legitimate, non-discriminatory or non-retaliatory reason for doing so.

50. Following her filing of the initial EEOC charge, on April 26, 2018, Wilson advised Plaintiff that Defendants do not want people working for them that have filed EEOC charges.

51. Following her filing of the 2018 EEOC charges, Plaintiff has continued to apply for multiple positions and Defendants have continued to deny her interviews and/or not select her despite her qualifications without a legitimate, non-discriminatory or non-retaliatory reason for doing so.

52. In April 2019, Plaintiff contacted the corporate Ethics Hotline to report Wilson's refusal to reimburse her for travel expenses and reported that Wilson was discriminating against her based upon her age, disability/perceived disability and retaliating against her for filing the EEOC charges.

53. Other employees had engaged in the same travel as Plaintiff and were promptly reimbursed. Following an investigation, the Plaintiff's expenses were reimbursed.

54. On July 17, 2019, Plaintiff was again singled out and written up for failure to bring her laptop to a corporate retreat. None of the other coding managers brought their laptops to the retreat, yet none of them were written up.

55. In December 2019, Plaintiff requested a stand-up desk from Averill as an accommodation for her lumbar disk pathology and back pain. Averill nor anyone else in Defendant's chain of command ever responded much less provided the requested accommodation.

56. On April 14, 2020, Plaintiff contacted the corporate Ethics Hotline to report additional discriminatory and retaliatory acts of Wilson and Graham. Specifically, Plaintiff alleged that Wilson failed to post an open position in violation of corporate policy, the employee handbook and the EEOC policy on posting positions. Plaintiff further alleged that Graham, as Plaintiff's supervisor, was continuing to harass and bully her.

57. The unposted position became vacant when Averill was demoted thus making the position(s) for the Tampa and Orange Park Coding Director vacant. Plaintiff advised Wilson she once again was interested in the position.

58. Wilson did not afford Plaintiff an opportunity to interview for the Coding Director position. Instead, she appointed Graham to the Tampa Coding Director position and Carter to the Orange Park Coding Director position. Neither Graham nor Carter have the required Bachelor's Degree for the position. Plaintiff has a Master's Degree. Graham is younger than Plaintiff and neither Graham nor Carter suffer from a disability. Neither Graham nor Carter have filed charges with the EEOC.

59. Plaintiff alleged to the ethics hotline that the adverse acts by Graham were additional discriminatory acts on Graham's part due to Plaintiff's age and disabilities and retaliation for the complaints filed against Graham and/or Defendant.

60. Plaintiff alleged to the hotline that the adverse acts by Wilson were further discriminatory acts on Wilson's part based upon Plaintiff's age and/or disabilities and retaliation for the complaints filed against Wilson and/or Defendant to prevent Plaintiff

from applying for and securing the Coding Director position since she was the person next in line and most qualified for the position.

61.  Wilson filled the subject unposted position with Graham and Carter, two employees less qualified than Plaintiff and who are not disabled and one who is younger than Plaintiff.  Wilson has not articulated any legitimate, non-discriminatory, non-retaliatory business reason for doing so.

62.  On May 21, 2020, following her EEOC charges and her calls to the corporate ethics hotline, Plaintiff was issued an unfounded and factually inaccurate disciplinary action form by Graham for alleged "rudeness" during an April 28, 2020 meeting.

63.  As a result of this discriminatory and retaliatory disciplinary action, Plaintiff has been unable to participate in executive level leadership calls and has been excluded from the annual bonus payout.

64.  Following the disciplinary action, Graham shared her screen with other company employees and managers boasting that Plaintiff had been disciplined.

65.  Following this disciplinary action, Plaintiff suffered a mental breakdown requiring immediate mental health care and resulting in a diagnosis of PTSD for which she remains medicated and seeks ongoing treatment.

66.  Plaintiff's performance evaluations throughout her tenure with Defendants were positive until she filed her EEOC charges.  In an effort to further discriminate and retaliate against Plaintiff based upon her age, disabilities and for filing her EEOC charges and other complaints, Defendants issued poor evaluations to Plaintiff for 2019 and 2020.

67.  As a result of the discriminatory and retaliatory acts of Defendants, Plaintiff's providers have opined that her mental health has deteriorated.

## COUNT I
## VIOLATION OF THE ADA/ADAAA, DISABILITY DISCRIMINATION

68.     Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

69.     Defendants engaged in unlawful and intentional employment practices in the State of Florida, in violation of 42 U.S.C. §102(a), (b)(1) and (b)(5)(B) as set forth herein.

70.     Plaintiff was an employee who was a qualified individual with a disability within the meaning of 42 U.S.C. 101(8), and who was able to perform the essential functions of her position, as well as all positions she sought, with or without accommodation.

71.     The effect of these unlawful employment practices by Defendants has been to deprive Plaintiff of equal employment opportunities and other terms, conditions, and privileges of her employment, and has otherwise adversely affected her status as an otherwise qualified employee of Defendants.

72.     As a direct result of the discriminatory conduct of Defendants, Plaintiff has suffered mental anguish, emotional harm, harm to her reputation, loss of capacity for enjoyment of life, loss of gainful employment, loss of earnings and income, and loss of valuable employment benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Defendants and:

a.      Direct the Defendants to make Plaintiff whole by providing her with appropriate lost earnings and employment benefits, with prejudgment interest, in amounts to be proven at trial, and otherwise affirmative relief and remuneration necessary to eradicate the effect of its unlawful employment practices including but not limited to promoting Plaintiff into one of the positions she has sought, or alternatively, front pay;

b.      Direct the Defendants to make Plaintiff whole by providing compensation

for pecuniary losses, including but not limited to costs incurred for health care in amounts to be proven at trial;

c.      Direct the Defendants to make Plaintiff whole by providing her with compensation for non-pecuniary losses, including emotional pain, suffering, inconvenience, and mental anguish in amounts to be proven at trial;

d.      Direct the Defendants to pay punitive damages for the Defendants' unlawful and intentional employment practices;

e.      Direct the Defendants to pay the reasonable costs and attorney's fees in connection with this action;

f.      Grant such further relief as the Court deems necessary and proper.

## COUNT II
## VIOLATION OF FLORIDA STATUTES §760.10, DISABILITY

73.     Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

74.      Defendants discriminated against Plaintiff on the basis of a handicap with respect to terms, conditions, and privileges of her employment and denied Plaintiff a reasonable accommodation in violation of § 760.10(1)(a) and (b), Florida Statutes.  The employment practices complained of herein were unlawful and were done with malice and reckless indifference to Plaintiff's protected rights under the "Florida Civil Rights Act of 1992."

75.  The effect of these unlawful employment practices by Defendants has been to deprive Plaintiff of equal employment opportunities and other terms, conditions, and privileges of her employment.

76.  As a direct result of the discriminatory conduct of Defendants, Plaintiff has suffered mental anguish, emotional harm, harm to her reputation, loss of capacity for enjoyment of life, loss of gainful employment, loss of earnings and income, and loss of

- 12 -

valuable employment benefits.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against the Defendants and:

a.      Direct the Defendants to make Plaintiff whole by providing her with appropriate lost earnings and employment benefits, with prejudgment interest, in amounts to be proven at trial, and otherwise affirmative relief and remuneration necessary to eradicate the effect of its unlawful employment practices including but not limited to promoting Plaintiff into one of the positions she has sought, or alternatively, front pay;

b.      Direct the Defendants to make Plaintiff whole by providing compensation for pecuniary losses, including but not limited to costs incurred for health care, in amounts to be proven at trial;

c.      Direct the Defendants to make Plaintiff whole by providing her with compensation for non-pecuniary losses, including emotional pain, suffering, inconvenience, and mental anguish in amounts to be proven at trial;

d.      Direct the Defendants to pay punitive damages for the Defendants' unlawful and intentional employment practices;

e.      Direct the Defendants to pay the reasonable costs and attorney's fees under 760.11 Florida Statutes, in connection with this action.

f.      Grant such further relief as the Court deems necessary and proper.

## COUNT III
## VIOLATION OF THE ADA/ADAAA, RETALIATION

77.   Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

78.   Defendants engaged in unlawful and intentional retaliation in violation of 42 U.S.C. §102(a) as delineated herein.

79.    Plaintiff was an employee who was a qualified individual with a disability

- 13 -

within the meaning of 42 U.S.C. 101(8), and who was able to perform the essential functions of her position and of all positions she sought with or without accommodation.

80.  The effect of these unlawful retaliatory employment practices by Defendants has been to deprive Plaintiff of equal employment opportunities and other terms, conditions, and privileges of her employment, and has otherwise adversely affected her status as an otherwise qualified employee of Defendants.

81.  As a direct result of the retaliatory conduct of Defendants, Plaintiff has suffered mental anguish, emotional harm, harm to her reputation, loss of capacity for enjoyment of life, loss of gainful employment, loss of earnings and income, and loss of valuable employment benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Defendants and:

a.      Direct the Defendants to make Plaintiff whole by providing her with appropriate lost earnings and employment benefits, with prejudgment interest, in amounts to be proven at trial, and otherwise affirmative relief and remuneration necessary to eradicate the effect of its unlawful employment practices including but not limited to promoting Plaintiff into one of the positions she has sought, or alternatively, front pay;

b.  Direct the Defendants to make Plaintiff whole by providing compensation for pecuniary losses, including but not limited to costs incurred for health care in the amounts be proven at trial;

c.      Direct the Defendants to make Plaintiff whole by providing her with compensation for non-pecuniary losses, including emotional pain, suffering, inconvenience, and mental anguish in amounts to be proven at trial;

d.      Direct the Defendants to pay punitive damages for the Defendants' unlawful and intentional employment practices;

e.      Direct the Defendants to pay the reasonable costs and attorney's fees in connection with this action.

f.      Grant such further relief as the Court deems necessary and proper.

## COUNT IV
## RETALIATION IN VIOLATION OF FLORIDA STATUTES §760.10

82.   Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

83.   Defendants retaliated against Plaintiff on the basis of a handicap with respect to terms, conditions, and privileges of her employment in violation of § 760.10(1) and (7), Florida Statutes.  The employment practices complained of herein were unlawful and were done with malice and reckless indifference to Plaintiff's protected rights under the "Florida Civil Rights Act of 1992."

84.   The effect of these unlawful employment practices by Defendants has been to deprive Plaintiff of equal employment opportunities and other terms, conditions, and privileges of her employment.

85.   As a direct result of the discriminatory conduct of Defendants, Plaintiff has suffered mental anguish, emotional harm, harm to her reputation, loss of capacity for enjoyment of life, loss of gainful employment, loss of earnings and income, and loss of valuable employment benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Defendants and:

a.   Direct the Defendants to make Plaintiff whole by providing her with appropriate lost earnings and employment benefits, with prejudgment interest, in amounts to be proven at trial, and otherwise affirmative relief and remuneration necessary to eradicate the effect of its unlawful employment practices including but not limited to promoting Plaintiff into one of the positions she has sought, or alternatively, front pay;

b.  Direct the Defendants to make Plaintiff whole by providing compensation for pecuniary losses, including but not limited to costs incurred for health care in amounts to be proven at trial;

c.  Direct the Defendants to make Plaintiff whole by providing her with compensation for non-pecuniary losses, including emotional pain, suffering, inconvenience, and mental anguish in amounts to be proven at trial;

d.  Direct the Defendants to pay punitive damages for the Defendant's unlawful and intentional employment practices;

e.  Direct the Defendants to pay the reasonable costs and attorney's fees under 760.11 Florida Statutes, in connection with this action.

f.  Grant such further relief as the Court deems necessary and proper.

## COUNT V
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

86.   Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

87.   Plaintiff was qualified for all of the available positions for which she sought.

88.   Plaintiff was passed over for vacant positions she sought and the positions were filled with employees younger than her.

89.   Plaintiff was at least as qualified for the positions she sought as the younger individuals selected for the positions in lieu of her.

90.   Defendants' violation of the ADEA was willful and not in good faith.

91.   As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, emotional distress, damages to her professional reputation and career, and other intangible injuries.

92.   As a result of the foregoing actions, Plaintiff retained the undersigned to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

93.     Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from Defendants if she prevails in this action pursuant to the ADEA.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment in her favor and against Defendants:

a.      Taking jurisdiction over this action;

b.      Declaring that Defendants violated the ADEA and that Defendants' violation of the ADEA was willful and not in good faith;

c.      Awarding Plaintiff the amount of her back pay and benefits for a period of up to three years due to Defendants' willful violation of the law;

d.      Promoting Plaintiff to one of the positions she sought with full seniority and benefits as though she had been selected when she applied or, alternatively, front pay and benefits in lieu of promotion;

e.      Awarding Plaintiff liquidated damages in an amount equal to the compensation awarded (requested in paragraph (c) above) due to Defendants' lack of good faith or, alternatively, awarding Plaintiff pre-judgment interest;

f.      Awarding Plaintiff costs and reasonable attorneys' fees pursuant to 29 U.S.C. §216(b);

g.      Awarding pre-judgment and/or post-judgment interest as appropriate; and

h.      Awarding such other relief as it deems just and proper including without limitation any actual or nominal damages warranted.

## COUNT VI
### VIOLATION OF FLORIDA STATUTES §760.10, AGE

94.   Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

95.   Plaintiff was qualified for the positions she sought but for which she was not selected.

96. Plaintiff was passed over for the positions she sought and said positions were filled by individuals younger than Plaintiff.

97. Plaintiff was at least as qualified for the positions she sought than the younger individuals that were selected.

98. Defendants' actions were taken with malice or reckless indifference to Plaintiff's statutorily protected rights.

99. As a result of the foregoing actions, Plaintiff suffered lost wages and benefits, damage to her future earning ability, professional reputation and career, and other intangible injuries.

100.    As a result of the foregoing actions, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

101.    Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from Defendants if she prevails in this action pursuant to the FCRA.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment in her favor and against Defendant:

    a.   Taking jurisdiction over this action;

    b.   Declaring that Defendants violated the FCRA and that Defendants' violation of the FCRA was willful and not in good faith;

    c.   Awarding Plaintiff the amount of her back pay and benefits;

    d.   Promoting Plaintiff to one of the positions she sought with full seniority and benefits as though she had been selected when she applied or, alternatively, front pay and benefits in lieu of promotion;

    e.   Awarding Plaintiff compensatory damages;

    f.   Awarding Plaintiff punitive damages;

    g.   Awarding Plaintiff costs and reasonable attorneys' fees pursuant to §760.11,

Fla. Stat. (2013);

      h.   Awarding pre-judgment and/or post-judgment interest as appropriate; and

      i.   Awarding such other relief as it deems just and proper including without limitation any actual or nominal damages warranted.

**COUNT VII**
**VIOLATIONS OF THE FLORIDA WHISTLEBLOWER'S ACT**

102.    Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

103.    Based upon her age and disabilities, Defendants passed over Plaintiff for positions she sought for which she was qualified; refused to interview her for positions she applied for and for which she was qualified; failed to post open positions for which Plaintiff was qualified; refused to nominate her for Defendants' management leadership development program despite her qualifications, experience and tenure; unjustifiably disciplined her; routinely harassed, bullied and humiliated her; refused to provide her accommodations she requested; refused to reimburse her for company expenses; and gave her unjustified poor performance evaluations.  Plaintiff reported her objections to these activities, policies and practices of Defendants via internal corporate complaints and to the corporate ethics hotline on at least two occasions as violations of the ADA/AA, ADEA and FCRA which constitute violations of a law, rule or regulation within the meaning of the Florida Whistleblower's Act, Florida Statutes §§448.101-105.

104.    As a result of Plaintiff engaging in protected activity, the Defendants continued to retaliate against Plaintiff causing her to suffer lost wages and benefits, emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, damage to her earning ability and reputation and other intangible injuries.

105.    As a result of the foregoing actions, Plaintiff retained the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

106.    Plaintiff is entitled to recover her attorneys' fees, costs and other litigation expenses from the Defendants if she prevails in this action pursuant to §448.104, Fla. Stat. (2013).

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment in her favor and against the Defendants:

a.   Declaring the actions of Defendants to be unlawful retaliation in violation of the Act;

b.    Awarding Plaintiff her lost wages and benefits and other remuneration;

c.    Promoting Plaintiff to one of the positions she sought with full seniority and benefits as though she had been selected when she applied or, alternatively, front pay and benefits in lieu of promotion;

d.    Enjoining Defendants from future violations of the Act;

e.    Awarding Plaintiff compensatory damages;

f.    Awarding Plaintiff the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to §448.104, Fla. Stat. (2013); and

g.    Awarding Plaintiff such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted as well as pre-judgment and post-judgment interest.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all matters so triable.

Dated this 12th day of November 2020.

Respectfully submitted,

*/s/M. Michele Leach-Pachinger*
M. Michele Leach-Pachinger, Esq.
Leach-Pachinger Law & Mediations, PLLC
Florida Bar No.:  007110
4112 53rd Avenue East, #20802
Bradenton, FL  34204
Tele:   (941) 752-2240
Fax:    (888) 506-3410
mlp@lplaw-mediations.com

TRIAL COUNSEL FOR PLAINTIFF